**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **THOMAS G. MORGAN, ID # 1294095,** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:08-CV-0131-P-BH** |
| | ) | |
| **NATHANIEL QUARTERMAN, Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an order of the Court, this case has been referred to the United States Magistrate Judge for findings, conclusions, and recommendation.

## I.  BACKGROUND

Petitioner, an inmate currently incarcerated in the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), filed a petition for habeas corpus relief pursuant to 28 U.S.C. § 2254 to challenge his conviction for aggravated robbery in Cause No. F04-52716-SM. Respondent is Nathaniel Quarterman, Director of TDCJ-CID.

**A.**     **Factual and Procedural History**

Petitioner was arrested for "robbing his landlord Jerry Lunsford of over $3000 in cash and stabbing him multiple times."  *Morgan v. State*, No. 05-05-00473-CR, 2006 WL 1126184, at *1 (Tex. App. – Dallas Apr. 28, 2006, pet. refused) (setting out undisputed facts).  He was arrested "about a mile from the scene and had 'large sums of cash' and a 'bloody knife' on him."  *Id.*

Prior to the jury being empaneled, petitioner made a claim under *Batson v. Kentucky*, 476 U.S. 79 (1986).  *See* Rep.'s R., Vol. III at 141 [hereinafter cited as RR-volume # at page].  The trial court conducted a hearing on that issue and found racially neutral reasons for the State's strikes.  *Id.*

at 141-45.

At trial, the jury faced conflicting testimony from the victim and petitioner about how the stabbing occurred. RR-IV at 16-22, 123 (victim's testimony of events and denial of hitting petitioner with hammer), 146-51 (petitioner's testimony that he stabbed the victim multiple times after being hit in the shoulder with a hammer). After considering the evidence, the jury found petitioner guilty of aggravated robbery. RR-V at 29.

During the punishment phase, the State presented evidence of petitioner's criminal history and questioned the victim and a probation officer. RR-VI at 8-39, 80-95. Petitioner called three character witnesses, including a former girlfriend, Julia McNeal. *Id.* at 40-80. The jury assessed punishment at life imprisonment, and the court sentenced him accordingly. *Id.* at 111-12.

On April 28, 2006, the court of appeals affirmed the conviction and overruled three points of error – (1) violation of *Batson*; (2) trial court error in admitting testimony that petitioner was arrested in a "high crime, high drug area"; and (3) ineffective assistance of counsel in failing to object to a line of questioning during cross-examination of petitioner. *Morgan v. State*, No. 05-05-00473-CR, 2006 WL 1126184, at *1-5 (Tex. App. – Dallas Apr. 28, 2006, pet. refused). On August 30, 2006, the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. (Pet. Writ of Habeas Corpus (Pet.) at 3.)

On January 22, 2007, petitioner filed a state application for writ of habeas corpus. S.H. Tr.[1] at 2. The Texas Court of Criminal Appeals denied the application without written order on the findings of the trial court without a hearing. *Ex parte Morgan*, No. 67,523-02, unpub. op. at 1 (Tex. Crim. App. Jan. 23, 2008).

---

[1] "S.H. Tr." denotes the state habeas records in this case.

**B.**     **Substantive Claims**

In January 2008, petitioner filed the pending petition for federal habeas relief.  (*See* Pet. at 1, 9.)  He raises the following claims:

   (1)     state court impeded access to court and obstructed exhaustion;

   (2)     the State misused voir dire questionnaires;

   (3)     *Brady*[2] violation;

   (4)     the State improperly cross-examined petitioner;

   (5)     the trial court improperly applied *Batson*; and

   (6)     ineffective assistance of trial counsel.

(*Id.* at 7-8F.)  Respondent answered and provided the state-court records.  (*See* Resp. Quarterman's Answer, hereinafter Answer.)  Petitioner filed a traverse to the answer.  (*See* Traverse, hereinafter referred to as Reply.)

Respondent concedes that petitioner has sufficiently exhausted his state remedies except as to Claims 1, 4, and parts of Claim 5.  (Answer at 5, 14 n.9.)  He contends that Claim 1 is not cognizable on federal habeas review, Claim 4 and the unexhausted parts of Claim 5 are procedurally barred,[3] and Claim 5 lacks merit.  (*Id.* at 6-10, 14-19.)

## II. APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

[3] Notwithstanding respondent's contention, the Court bypasses the procedural issue because the claims are more easily resolved on the merits.  *See Busby v. Dretke*, 359 F.3d 708, 720 (5th Cir. 2004) (recognizing in § 2254 context that circumstances may warrant bypassing a question of procedural default when the allegedly barred claim is more easily resolved "by looking past any procedural default").

habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

Because petitioner filed the instant petition after its effective date, the Act applies to his petition.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term

of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000). In this case, these AEDPA standards

apply to petitioner's claims addressed on the merits in the state habeas and appellate processes.

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.

*Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established fed-

eral law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court]

on a question of law or if the state court decides a case differently than [the] Court has on a set of

materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Absent such

a direct conflict with Supreme Court authority, habeas relief is only available if a state court decision

is unreasonable." *Smith v. Quarterman*, 515 F.3d 392, 399 (5th Cir. 2008). *Williams* instructs that

a writ must issue "if the state court identifies the correct governing legal principle from [the] Court's

decisions but unreasonably applies that principle to the facts of the prisoner's case." 529 U.S. at

4

413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption "applies to explicit findings of fact and to 'those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.'" *Williams v. Quarterman*, 551 F.3d 352, 358 (5th Cir. 2008) (quoting *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001)).

Petitioner relies upon pre-AEDPA case law for arguing that this Court should afford no presumption of correctness to the findings of the state courts because he only received a "paper hearing" in state court and because the judge who handled his state habeas application differed from the one who presided over his trial. (Reply at 4.) This Court has previously rejected similar arguments based on *Valdez. See Morrow v. Johnson*, No. 3:00-CV-2009-L, unpub. recommendation at 15-16

(N.D. Tex. Apr. 9, 2002), *accepted by* unpub. order (N.D. Tex. Dec. 30, 2002) *and aff'd*, 367 F.3d

309 (5th Cir. 2004). "In *Valdez*, the Fifth Circuit held that in cases governed by the AEDPA, a full

and fair hearing at the state court level is no longer a 'prerequisite to operation of AEDPA's

deferential framework' as it was under pre-AEDPA standards." *Id.* (quoting *Valdez*, 274 F.3d at

948). In denying a request for a Certificate of Appealability for a "claim that the federal district

court erred in applying a presumption of correctness to the state habeas findings because they rested

on the papers filed and not on testimony at an evidentiary hearing", the Fifth Circuit stated:

> The presumption of correctness under AEDPA is accorded adjudications by state
> courts. If the state has rejected a petitioner's habeas claim on its merits, it has
> adjudicated the claim. The AEDPA requires that we presume correct the state
> court's findings of fact unless the petitioner "rebut[s] the presumption of correctness
> by clear and convincing evidence." This is so even if the hearing was a "paper"
> hearing and may not have been full and fair.

*Morrow*, 367 F.3d at 315 (footnotes and citations omitted). Petitioner's arguments are likewise

foreclosed.

Whether examining reasonableness under § 2254(d)(1) or (2), the inquiry "should be object-

ive rather than subjective." *Id.* at 313. Except when a state decision is contrary to Supreme Court

precedent, federal habeas relief is warranted under the AEDPA standards only when "the state court

decision is both incorrect *and* objectively unreasonable." *Id.*; *accord Smith*, 515 F.3d at 399. When

the state court "reaches a 'satisfactory conclusion'", federal habeas relief is not warranted. *Morrow*,

367 F.3d at 313 (quoting *Williams*, 529 U.S. at 410-11).

### III.  ACCESS TO COURT

In his first claim, petitioner complains that the state court impeded his access to court and

obstructed the exhaustion process during post-conviction proceedings. (Pet. at 7-7A.)

This claim is not cognizable under 28 U.S.C. § 2254. Federal habeas relief cannot be had

"absent the allegation by a [petitioner] that he or she has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States." *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). The courts entertain federal petitions under § 2254 "only on the ground" that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254(a). Courts cannot grant habeas corpus relief to correct alleged errors in state habeas proceedings. *See Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) (holding that habeas relief was not available for such alleged errors); *see also Morris v. Cain*, 186 F.3d 581, 585 n.6 (5th Cir. 1999) ("[E]rrors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief."); *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997) ("infirmities in state habeas [and other post-conviction] proceedings do not constitute grounds for relief in federal court." ). Petitioner's challenges to the state post-conviction proceedings merely attack proceedings collateral to his detention and not his detention itself. Accordingly, this claim entitles petitioner to no habeas relief.

## IV.  JURY SELECTION

Petitioner complains that the prosecution misused juror questionnaires to unconstitutionally strike six venire members solely on the basis of their race (Claim 2) and that the trial court improperly overruled his challenge to such conduct under *Batson v. Kentucky*, 476 U.S. 79 (1986) (Claim 5). (Pet. at 7, 7B, 8A-8B.)

In *Batson*, the Supreme Court re-affirmed that the Fourteenth Amendment right to equal protection extends to the jury selection process. 476 U.S. at 84; *Miller-El v. Dretke (Miller-El II)*, 545 U.S. 231, 238 (2005). It is unconstitutional for a prosecutor to use allotted peremptory challenges to exclude potential jurors solely on the basis of their race. *See Batson* 476 U.S. at 89.

7

Trial courts use a three-step process established in *Batson* to adjudicate claims of racially motivated peremptory challenges:  (1) the defendant first must make a prima facie showing that the prosecutor exercised a peremptory challenge based on race; (2) upon such showing, the prosecution has the burden to articulate a race-neutral explanation for each of the challenged strikes; and (3) based upon the parties' submissions, the trial court determines whether the defendant has shown purposeful discrimination.  *See Snyder v. Louisiana*, 128 S. Ct. 1203, 1207 (2008).  The critical question at step three is the persuasiveness of the prosecutor's justification for his peremptory strikes.  *Miller-El v. Cockrell (Miller-El I)*, 537 U.S. 322, 338-39 (2003).  Implausible or fantastic justifications are usually pretexts for purposeful discrimination.  *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam).  The *Batson* determination is primarily based on the trial court's evaluation of the credibility of counsel's explanations.  *United States v. Wallace*, 32 F.3d 921, 925 (5th Cir. 1994).  The demeanor of the prosecutor is often the best evidence of discriminatory intent, and "determinations of credibility and demeanor lie peculiarly within a trial judge's province."  *Snyder*, 128 S. Ct. at 1208 (citation and internal quotation marks omitted).

Petitioner claims that six individuals of his race were improperly excluded from the jury in his case.  In response to petitioner's *Batson* challenges, the trial court held a hearing.  RR-III at 141-45.  Petitioner specifically objected to the strikes of venire members 10, 12, 14, 31, 43, and 45 as racially discriminatory.  *Id.* at 141, 143-44.  The prosecutor explained that he had a consistent plan to strike all prospective jurors who ranked rehabilitation ahead of deterrence as the primary purpose of punishment on their questionnaires, and venire members 12, 31, 43, and 45 fell into that category.  *Id.* at 142-43.  He also provided additional reasons for member 12 (questionnaire indicated that prosecutors were "the enemy"), 43 ("prosecutor's attack" and "Uncle, arson"), and 45 (questionnaire

8

stated that "only God can judge"). *Id.* at 142-43, 145. For member 10, he explained that she had a funeral to attend and had a relative with a prior robbery or burglary. *Id.* at 143, 145. Member 14 had a close friend with an involuntary manslaughter conviction which resulted in jail time and probation. *Id.* at 142. The prosecutor listed four other persons who were struck because they or relatives had criminal convictions; two of these individuals also listed rehabilitation as the primary purpose of punishment. *Id.* at 145.

Based on these proffered, race-neutral explanations, the trial court found that the State did not exercise it peremptory strikes in a racially discriminatory manner. *Id.* at 145. The court of appeals held that the trial court's ruling was not clearly erroneous given that petitioner had not carried his burden to show the proffered reasons were merely a pretext for racially discriminatory strikes. *Morgan v. State*, No. 05-05-00473-CR, 2006 WL 1126184, at *2 (Tex. App. – Dallas Apr. 28, 2006, pet. refused).

"[T]he trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference." *Hernandez v. New York*, 500 U.S. 352, 364 (1991); *accord Batson*, 496 at 98 n.21 (when a finding of fact turns "on evaluation of credibility, a reviewing court ordinarily should give those findings great deference"). The resolution of factual issues inherent in *Batson* determinations by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. *Miller-El II*, 545 U.S. at 240 (relying on 28 U.S.C. § 2254(e)(1)).

Petitioner has not rebutted, by clear and convincing evidence, the presumption that the trial court's findings of fact are correct. He points out that sixty percent of the State's peremptory strikes were against his race and contends that the trial court ignored (1) the questionnaires used in Dallas

County which have been historically prejudicial to his race; (2) a manual published by the Dallas County District Attorney's office (the Sparling Manual); (3) racial euphemisms used by the prosecutor, *i.e.*, using "they" and "them", when discussing African-American venire members; and (4) the explanation for striking venire member 10 because she had a family member with a robbery or burglary conviction is not supported by the record.  (*See* Pet. at 7, 7B, 8A-8B.)  As discussed in the following paragraphs, these contentions provide no basis to overcome the presumption.

Petitioner's reliance upon the historical questionnaires and the Sparling Manual is misplaced. While Dallas County has been found to have a history of discrimination in the jury selection process, that history is based upon convictions prior to *Batson* in 1986.  *See Miller-El II*, 545 U.S. at 253, 263-66 (holding that the historical evidence is another factor that supported finding pretext); *Miller-El I*, 537 U.S. at 334-35 (discussing historical evidence and noting that the Sparling Manual was written in 1968, "remained in circulation until 1976, if not later, and was available at least to one of the prosecutors in Miller-El's trial"); *Reed v. Quarterman*, 555 F.3d 364, 381-82 (5th Cir. 2009) (discussing the historical evidence of discrimination and finding a *Batson* violation in a 1983 conviction).  Petitioner has presented nothing to show how historical evidence of discrimination is relevant to his 2005 conviction.

Petitioner's reliance on alleged racial euphemisms by the prosecution has no foundation in fact.  Petitioner identifies page 145 of the third volume of the reporter's record as containing the alleged euphemisms.  In response to a court request to state into the record those individuals who were struck due to other violent crimes, the prosecutor answered:  "Yes, Your Honor, most of them were the ones with rehab, but Number 10, robbery, burglary by a family member."  RR-III at 145. The use of "them" in that context is not a substitute for a racial grouping.  The transcript of the entire

10

*Batson* hearing contains no factual basis for petitioner's allegation of euphemisms.

Although petitioner contends that the record does not support the prosecution's explanation for striking member 10 due to a relative's robbery or burglary conviction, he does not contest the existence of the conviction.  (Pet. at 8A.)  Petitioner also ignores the fact that the prosecutor primarily struck member 10 because she had a funeral to attend.  *See* RR-III at 143.  Petitioner also relies on the undisputed fact that the prosecutor used sixty percent of his peremptory strikes against individual's of petitioner's race.  Although a high strike rate of a particular race is relevant to the *Batson* determination, it is not a determinative factor.  *See Miller-El II*, 545 U.S. at 240-51 (discussing the "remarkable" statistics regarding the prosecution's peremptory challenges with the "[m]ore powerful" evidence of purposeful discrimination).  Petitioner has presented no sufficient reason why this Court should not presume correct the trial court's finding that the State had race-neutral reasons for exercising its peremptory strike.  Furthermore, the finding is entirely consistent with the state record.  The finding is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner's *Batson* claim (Claim 5) entitles him to no habeas relief.  Because the trial court properly overruled petitioner's *Batson* challenge, Claim 2 necessarily fails.

## V.  SUPPRESSION OF EXCULPATORY EVIDENCE

In his third claim, petitioner asserts that the State suppressed favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  (Pet. at 7, 7C-7D.)

In *Brady*, the Supreme Court held that a prosecutor must disclose evidence to a criminal defendant if that evidence is favorable to the defendant and material to his guilt or punishment.  373 U.S. at 87.  "*Brady* claims involve 'the discovery, after trial of information which had been known

11

to the prosecution but unknown to the defense.'" *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

"[E]vidence is 'material' under *Brady*, and the failure to disclose it justifies setting aside a conviction, only where there exists a 'reasonable probability' that had the evidence been disclosed the result at trial would have been different." *Wood v. Bartholomew*, 516 U.S. 1, 5 (1995).

> The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)). In other words, there must be "a 'significant possibility' of a different result to characterize the *Brady* materiality standard." *Strickler*, 527 U.S. at 300 (Souter, J., concurring). In any event, the touchstone inquiry remains "whether the evidentiary suppression 'undermines our confidence' that the factfinder would have reached the same result." *Id.* at 300-01.

In this case, petitioner alleges that the State suppressed parole records which comprise State's Exhibit 25 offered at trial during punishment. He contends that the suppressed documents affected his attorney's ability to prepare and question witnesses, establish that petitioner had been in a substance abuse program, and marshal the evidence and witnesses, and that the documents were used to impeach his character witnesses with "have you heard" questions regarding his prison disciplinary record and a statement by his former girlfriend regarding threats made by petitioner.

12

The trial court deemed State's Exhibit 25 inadmissible because the prosecution did not timely

disclose the documents to the defense.  RR-VI at 86, 90.  On state habeas review, a different judge

found no *Brady* violation because the withheld evidence was "inculpatory, rather than exculpatory."

S.H. Tr. at 52.  The Texas Court of Criminal Appeals denied petitioner's state application for writ

of habeas corpus on the findings of the trial court.  *Ex parte Morgan*, No. 67,523-02, unpub. op. at

1 (Tex. Crim. App. Jan. 23, 2008).

The record supports the state habeas finding.  Given petitioner's extensive criminal history,

the brutal nature of the charged offense, and petitioner's admission that he stabbed the victim in self-

defense and robbed him, *see*, *e.g.*, RR-IV at 140-41 (discussing criminal history); 150-51 (discussing

multiple stab wounds, self-defense theory, and after-the-fact robbery), he has shown no reasonable

probability that the outcome of the trial or punishment proceedings would have differed had the

documents been disclosed earlier.  The alleged suppression does not undermine confidence in the

verdict or the sentence rendered.  In view of the evidence presented, the withheld documents are not

material within the meaning of *Brady*.  Petitioner's *Brady* claim entitles him to no habeas relief.

## VI.  IMPROPER CROSS-EXAMINATION

In his fourth claim, petitioner asserts that the prosecutor improperly cross-examined him by

asking about legal strategy discussed with his attorney.  (Pet. at 8.)

"Prosecutorial misconduct implicates due process concerns."  *Foy v. Donnelly*, 959 F.2d

1307, 1316 (5th Cir. 1992).  Actions and statements of a prosecutor may violate due process in two

ways.  "They may abridge a specific right conferred by the Bill of Rights, or may constitute a denial

of due process generally, thus constituting a 'generic substantive due process' violation."  *Id.*

(quoting *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988)).  The Court should "first determine

13

the type or types of misconduct alleged, because '[t]he case law supplies a different test for each kind of due process violation.'" *Id.* (quoting *Rogers*, 848 F.2d at 608).

In this case, petitioner alleges a general violation of due process rather than a specific violation of a particular right. In such cases, the Court asks whether the prosecutorial actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In the habeas context, the appropriate standard of review for such allegations is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (quoting *DeChristoforo*, 416 U.S. at 642). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992) (internal quotation marks omitted).[4]

Petitioner raised a similar claim on direct appeal in the context of ineffective assistance of counsel, which was found to have no merit due to lack of prejudice. *See Morgan v. State*, No. 05-05-00473-CR, 2006 WL 1126184, at *3-4 (Tex. App. – Dallas Apr. 28, 2006, pet. refused). Even assuming that the questioning constitutes misconduct for purposes of this recommendation, the claim fails in the current context for basically the same reason. Petitioner has shown no reasonable probability that the verdict would have differed had the prosecutor not asked the offending questions. The prosecutor's questioning did not render the trial fundamentally unfair. This claim entitles petitioner

---

[4] This is the only test necessary to apply for generic violations of due process. If the alleged misconduct rises to the level of constitutional error, the Court need not apply a harmless error test. *Darden*, 477 U.S. at 183 n.15. The Fifth Circuit has observed, furthermore, that application of a harmless error test would be "superfluous" after a determination that the trial was rendered fundamentally unfair. *Kirkpatrick v. Blackburn*, 777 F.2d 272, 280 (5th Cir. 1985).

14

to no federal habeas relief.

## VII.  INEFFECTIVE ASSISTANCE OF COUNSEL

In his sixth claim, petitioner alleges that his trial attorney rendered ineffective assistance in numerous respects.  (*See* Pet. at 8C-8F.)

The Sixth Amendment provides criminal defendants a right to effective assistance of counsel during trial.  U.S. Const., art. VI.  To successfully state a claim of ineffective assistance of counsel under existing Supreme Court precedent, petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Smith v. Quarterman*, 515 F.3d 392, 403 (5th Cir. 2008). A failure to establish either prong of this test requires a finding that counsel's performance was constitutionally effective.  *Strickland*, 466 U.S. at 696.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

To determine whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689.  Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."  *Id.* at 691.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  In the context of ineffective assistance of trial counsel, the prejudice component of the *Strickland* test "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."  *Williams v. Taylor*, 529 U.S. 362,

393 n.17 (2000) (citations and internal quotation marks omitted).  When evidence adduced at trial overwhelmingly establishes a petitioner's guilt, there is generally no reasonable probability that deficiencies at trial affected the verdict.  *Johnson v. Cockrell*, 301 F.3d 234, 239 (5th Cir. 2002); *Creel v. Johnson*, 162 F.3d 385, 396 (5th Cir. 1998).  Furthermore, when alleged deficiencies of trial counsel occur in a non-capital, state sentencing context "a court must determine whether there is a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been significantly less harsh."  *Spriggs v. Collins*, 993 F.2d 85, 88 (5th Cir. 1993); *see also United States  v. Grammas*, 376 F.3d 433, 438 n.4 (5th Cir. 2004) (holding that *Spriggs* survived *Glover v. United States*, 531 U.S. 198 (2001) in the § 2254 context).  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel.  *Strickland*, 466 U.S. at 695-96.

Petitioner provides little support for his allegations that his attorney rendered ineffective assistance when he

    (a)    failed to file pretrial motions to adequately investigate defense witnesses so as to avoid prejudicial testimony from his former girlfriend;

    (b)    failed to seek or accept a continuance offered by the court so as to adequately cross-examine witnesses after the untimely disclosure of Exhibit 25;

    (c)    failed to file pretrial motions to prevent the use of remote prison disciplinary infractions or convictions during the punishment phase;

    (d)    failed to object to prosecutor's reliance on the juror questionnaires;

    (e)    failed to obtain documentation that petitioner was on the prison's waiting list for drug treatment;

    (f)    failed to seek mistrial due to the prosecution's use of Exhibit 25 in contra-

vention of its order;[5]

(g)     failed to seek mistrial when the probation officer testified regarding materials contained in Exhibit 25;

(h)     failed to make an opening statement and made a "baffling" closing argument;

(i)     was "antagonistic and adverse" to him and attempted to withdraw from the case without his knowledge;

(j)     failed to shuffle the jury;

(k)     failed to object to improper use of a juvenile adjudication to impeach a character witness;

(l)     retaliated against him because he could no longer pay the attorney; and

(m)     failed to relay a potential plea offer, secure his presence at plea discussions, and inform him of the desirability of accepting the offered plea.[6]

(Pet. at 8C-8F.)

Counsel addressed some alleged deficiencies in his affidavit submitted to the state habeas court. *See* S.H. Tr. at 55-56. He specifically averred that he was prepared for punishment phase, his failure to make an opening statement was a matter of trial strategy, and he did not request a jury shuffle because the circumstances did not merit a shuffle. *See id.* The habeas court found the attorney credible. *Id.* at 53. The credibility finding is presumed correct unless petitioner rebuts it with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Petitioner has not shown clear and convincing evidence which overcomes that presumption. The Court thus defers to these factual findings in resolving petitioner's claims of ineffective assistance of counsel.

As to his first claim, petitioner identifies no pretrial motion that counsel failed to file

---

[5]  Petitioner also frames the deficiency in terms of failing to inform the court of the use of Exhibit 25. The Court considers both characterizations as a failure to seek a mistrial.

[6]  Petitioner identified the last deficiency prior to listing the other alleged deficiencies of counsel in lettered paragraphs.

regarding his former girlfriend.  She was a defense character witness who confirmed on cross-examination that petitioner had threatened her and her family.  Actions of counsel are often dependent on actions of their clients and information provided by their clients.  *See Strickland v. Washington*, 466 U.S. 668, 691 (1984).  Petitioner does not argue that the girlfriend provided false testimony on cross-examination.  He was actually in the best position to inform counsel that she might not be a good character witness should the threats come to light.  There is no deficiency of counsel in the failure to file pretrial motions.

Petitioner's claims relating to punishment fail because he has shown no prejudice.  He has shown no reasonable probability of a significantly less harsh sentence in the absence of the alleged deficiencies.

Petitioner claims that counsel failed to object to the prosecutor's reliance on juror questionnaires.  As already discussed, the prosecutor's use of juror questionnaires did not result in any violation of *Batson*.  Petitioner has identified no legitimate objection that counsel could have made with respect to those questionnaires.  Effective assistance of counsel does not require attorneys to assert meritless objections.  *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997).

Petitioner's claims that counsel failed to seek a mistrial related to the use of Exhibit 25 at punishment fail because he has not affirmatively shown prejudice.  In the context of a failure to request mistrial, petitioner must show a reasonable probability that the trial court would have granted the request had it been made.  Nothing of record shows that the trial court would have granted a request for mistrial had counsel made it.

Petitioner also claims ineffective assistance based on a failure to make an opening statement and a "baffling" closing argument.  The credible affidavit of counsel shows that counsel chose to

18

forego an opening statement as a matter of trial strategy. Counsel's closing argument focused on the State's burden to prove that aggravated robbery beyond a reasonable doubt and suggested that the evidence merely shows that petitioner committed felony theft. *See* RR-V at 11-19. Given petitioner's self-defense theory and the facts admitted by petitioner, there is no deficiency in the approach taken by counsel during closing argument. Petitioner has not overcome the strong presumption that counsel's conduct falls within the wide range of reasonable assistance. In addition, in light of the evidence presented at trial, petitioner has shown no reasonable probability of a different outcome at trial had counsel chosen to make an opening statement or made a different closing argument.

Although petitioner makes a general claim of ineffective assistance based upon counsel being antagonistic and adverse and attempting to withdraw, he makes no attempt to show how this conduct prejudiced him at trial or punishment. He provides nothing to show a reasonable probability that had counsel acted differently the outcome of trial or punishment would have differed.

Petitioner's claim that counsel failed to request a jury shuffle during voir dire is adequately addressed by the credible affidavit of counsel. Based upon that affidavit, the Court finds that counsel did not render deficient representation in this respect. Petitioner has also shown no reasonable probability that the outcome of his trial would have differed had his attorney requested a jury shuffle.

Petitioner's claim that counsel retaliated against him because he could not continue to pay for his services is conclusory. Petitioner has presented nothing to overcome the presumption that counsel's conduct falls within the range of reasonable representation. Conclusory claims of ineffective assistance of counsel do not entitle one to federal habeas relief. *Miller v. Johnson*, 200

F.3d 274, 282 (5th Cir. 2000).

Finally, petitioner provides no details of counsel's alleged failures but only directs the Court's attention to Exhibit 1 attached to his state habeas application.  (*See* Pet. at 8C.)  That exhibit – a copy of the trial docket – shows that plea proceedings were scheduled for October 6, October 22, and October 26, 2004, and the entry of October 22 notes:  "Do not bring down per [attorney]."  S.H. Tr. at 22.  This exhibit provides insufficient support for a deficiency of counsel during plea proceedings or negotiations.  "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."  *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).  Furthermore, the record reflects that the State offered forty years just prior to trial, but petitioner would not plead unless he received twenty years or less – an offer that was never made to him.  *See* RR-II at 4-8.  Petitioner has not overcome the strong presumption that counsel's conduct falls within the wide range of reasonable assistance.[7]

For all of these reasons, petitioner's claims of ineffective assistance of counsel entitle him to no relief in this action.

## VIII.  STATE CONSIDERATION OF CLAIMS

Other than the allegedly barred claims, the parties agree that petitioner raised his federal claims in state court.  The state courts adjudicated the claims on the merits.  The decisions to deny relief at the state level is consistent with applicable Supreme Court precedent.  The decisions involved no unreasonable application of Supreme Court precedent.  The adjudication of the claims

---

[7]  Petitioner argues in his reply that counsel's failure to bring him to any plea hearing violates state law.  (Reply at 18.)  A violation of state law, however, does not present a constitutional claim that entitles petitioner to federal habeas relief.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

did not result in a decision that was based upon an unreasonable determination of the facts in light

of the evidence presented to the state court.  Under applicable Supreme Court standards and the

AEDPA standards, petitioner is entitled to no habeas relief on the claims raised in the instant petition

and pursued through the state appellate or habeas processes.

## IX.  EVIDENTIARY HEARING

Upon review of the pleadings filed herein and the proceedings held in state court as reflected

in the state-court records, an evidentiary hearing appears unnecessary.

## X.  RECOMMENDATION

The Court should **DENY** with prejudice the request for habeas corpus relief brought pursuant

to 28 U.S.C. § 2254.

**SIGNED this 28th day of May, 2009.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (*en banc*).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

21